IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **MOHAMMED BOUJAER** | § | |
| **PLAINTIFF** | § | |
| | § | |
| v. | § | |
| | § | NO. _____ |
| **LOCKEED MARTIN CORPORATION,** | § | |
| | § | |
| **DEFENDANT** | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Mohammed Boujaer, files this Original Petition to seek relief under against Defendant, Lockeed Martin Corporation and alleges as follows:

### I.     PARTIES

1. Plaintiff, Mohammed Boujaer, is an individual who is a citizen of the State of Texas, and who may be served with process through his attorney of record, Debra Edmondson.

2. Defendant, Lockheed Martin Corporation is a corporation located at 6801 Rockledge Drive, Bethesda, MD 20817, and doing business in Tarrant County at 1 Lockheed Blvd., Fort Worth, TX 76108, and may be served with process by serving its registered agent Corporation Service Company dba CSC – Lawyers Incorporating Service Company at 211 E. 7th Street, Ste 620, Austin, Texas 78701.

### II.     JURISDICTION AND VENUE

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. § 1981.

2. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to this claim occurred in this district and Defendant maintains operations and employed Plaintiff within this district.

### III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. A plaintiff has 300 days from the date of the incident to file a formal charge with the Equal Employment Opportunity Commission ("EEOC").[1] Plaintiff's employment with Lockheed Martin was terminated on March 22, 2024. Plaintiff had 300 days from then to file his formal charge with the EEOC. Plaintiff timely filed his formal charge with the EEOC on August 19, 2024.

5. On September 3, 2025, the EEOC issued the Notice of Right to Sue Letter to Plaintiff, stating that Plaintiff had 90 days from the receipt of the notice to file his lawsuit against Defendant. If Plaintiff received the Notice of Right to Sue Letter[2] on the date it was issued, Plaintiff had until December 3, 2025, to file the lawsuit. Plaintiff has timely filed this present lawsuit prior to that date.

6. Plaintiff has exhausted all administrative remedies, and all conditions precedent have occurred to allow Plaintiff to bring these causes of action against Defendant.

### IV.  FACTUAL BACKGROUND

---

[1] *See* 42 U.S.C § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(B).
[2] A copy of the Right to Sue letter is attached hereto and incorporated herein as Exhibit A.

7. Plaintiff Mohammed Boujaer is a 60-year-old man of African descent and Muslim faith. He worked as a Deployment Technician at Lockheed Martin's (hereinafter "Lockheed") Fort Worth facility from February 28, 2022, until his termination on March 21, 2024.

8. Plaintiff was formally employed and paid by Acara Solutions, Inc. (hereinafter "Acara"), but he worked exclusively under the direction, supervision, and control of Lockheed. Lockheed managers assigned Plaintiff's daily work, controlled his schedule, monitored his production, supervised his performance, and retained the authority to remove him from the worksite and direct his termination.

9. Throughout his employment, Plaintiff consistently performed his job duties well. He regularly volunteered for additional work, sought extra ServiceNow tickets, and often asked Lockheed employees for more assignments when he completed his tasks. Plaintiff also worked overtime whenever it was offered and was recognized for his attention to detail in completing and documenting his work.

10. Despite his strong work ethic, Plaintiff was denied equal access to training, overtime opportunities, and job-related assignments that were routinely provided to employees outside his protected classes. Several individuals without IT experience were hired or brought into the department and received preferential treatment, including training and coaching that Plaintiff did not receive. Many of these employees had personal or social connections to Lockheed supervisor Craig Phillips.

11. Plaintiff also observed that employees outside of a protected class who engaged in serious workplace misconduct were not disciplined or terminated. In multiple instances, employees outside Plaintiff's protected classes engaged in behavior that would typically result in corrective action or discharge, yet they were allowed to remain employed. These disparate

outcomes contrasted sharply with the way Plaintiff and other similarly protected workers were treated.

12. Throughout his employment, Plaintiff made clear his desire to advance and sought sponsorship for a security clearance, an essential step toward securing long-term employment at Lockheed. Plaintiff's direct supervisor Craig Phillips refused to assist him in pursuing this opportunity. Plaintiff nevertheless obtained help from another Lockheed representative and successfully completed the first interview in the clearance process. Before he could complete the second interview, Plaintiff was terminated from the worksite.

13. Plaintiff was never counseled, written up, or warned about alleged performance issues. Acara never informed him of any concerns. Lockheed did not document or communicate problems with his work at any point prior to the directive to terminate his assignment. Plaintiff had no history of misconduct and received no indication that his job was in jeopardy. Conversely, Plaintiff received positive feedback for his work.

14. On March 22, 2024, Lockheed directed Acara to remove Plaintiff from the worksite and terminate his assignment. The stated reason was "performance." This explanation was inconsistent with Plaintiff's actual work history, his repeated requests for work, his completion of additional tickets and overtime, and Lockheed's prior feedback on his documentation and reliability.

15. On August 19, 2024, within 150 days of his termination, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission, dual-filed with the Texas Workforce Commission Civil Rights Division. He alleged discrimination based on national origin (African) and religion (Muslim), as well as unequal treatment, denial of opportunities, and termination based on pretextual reasons.

16. Plaintiff has received a Notice of Right to Sue from the EEOC and has exhausted all administrative prerequisites to filing this lawsuit.

## V. CAUSES OF ACTION

### A. Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e-2(a) – National Origin

17. Plaintiff realleges paragraphs 8 through 16 as though fully set forth herein.

18. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), prohibits employers from discriminating against an employee with respect to terms, conditions, or privileges of employment because of the employee's national origin.

19. A plaintiff asserting national origin discrimination based on circumstantial evidence establishes a prima facie case by showing that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by someone outside his protected class or was treated less favorably than similarly situated employees who were not members of the protected class. See *Talley v. Bravo Pitino Rest.*, 61 F.3d 1241, 1246 (6th Cir. 1995)

20. Plaintiff is a member of a protected class based on national origin, as he is of African descent.

21. Defendant Lockeed and Acara were joint employers of Plaintiff within the meaning of Title VII. Although Acara issued Plaintiff's paychecks and handled administrative payroll functions, Lockheed exercised the right to control the essential terms and conditions of Plaintiff's employment. Lockheed supervised Plaintiff's day-to-day work, assigned and monitored his ServiceNow tickets, controlled his schedule, furnished the equipment and worksite, evaluated his performance, and possessed the authority to remove him from the worksite—an action that directly resulted in the termination of his employment. Acara did

not supervise Plaintiff, assign work, evaluate performance, or determine whether his employment continued; it merely implemented Lockheed's decisions. Under the hybrid economic-realities/common-law control test applied by the Fifth Circuit for Title VII employer status, Lockheed and Acara jointly employed Plaintiff. Therefore, Lockeed qualifies an employer within the definition of Title VII.

22. Plaintiff was qualified for his position, consistently performed his job duties well, and received positive feedback regarding his work performance.

23. Plaintiff was treated less favorably than similarly situated employees outside his protected class. Employees who were not of African descent received training, coaching, preferential assignments, and overtime opportunities that were denied to Plaintiff. Individuals with little or no IT experience were selected for opportunities that Plaintiff was denied.

24. Employees outside Plaintiff's protected class who engaged in serious workplace misconduct were not disciplined or terminated. Plaintiff, in contrast, was terminated without warning despite strong performance and no prior disciplinary record.

25. Defendant's stated reason for Plaintiff's termination—alleged performance issues—was false and pretextual. The asserted justification was inconsistent with Plaintiff's documented work performance, his repeated requests for additional work, his willingness to work overtime, and Lockheed's own feedback.

26. Defendant's actions constitute unlawful discrimination based on national origin in violation of Title VII.

**B. <u>Title VII of the Civil Rights Act of 1964, 42 U.S. C. § 2000e-2(a) – Racial Discrimination</u>**

27. Plaintiff realleges paragraphs 8 through 26 as though fully set forth herein.

28. Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because of race. 42 U.S.C. § 2000e-2(a)(1). For purposes of Title VII, race includes physical, ethnic, and ancestral characteristics associated with racialized groups, including Arab, Middle Eastern, and North African ancestry. *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 606, 107 S. Ct. 2022, 2024 (1987)

29. Defendant is an employer as defined by Title VII, 42 U.S.C. § 2000e(b). Defendant supervised Plaintiff's day-to-day work, controlled his schedule and assignments, evaluated his performance, furnished the equipment and workplace, and possessed the authority to remove him from the worksite. Under the Fifth Circuit's hybrid economic-realities/common-law control test, Defendant was Plaintiff's employer for purposes of Title VII.

30. Plaintiff is a male of Arab and North African ancestry and is therefore a member of a protected class under Title VII's prohibitions against racial discrimination. Discrimination based on ancestry is a form of racial discrimination prohibited by Title VII.

31. Plaintiff was qualified for his position as a Deployment Technician. He consistently performed his job duties well, regularly volunteered for additional assignments, completed his work efficiently, worked overtime when offered, and received positive feedback for the quality of his performance and documentation. Plaintiff had no history of discipline, no warnings, and no documented performance issues.

32. Despite his strong performance, Plaintiff was treated less favorably than similarly situated employees who were not of Arab or North African ancestry. Employees outside Plaintiff's

protected class, including individuals with no IT experience and personal or social connections to supervisors, were given training, coaching, work opportunities, and favorable assignments that Plaintiff was denied.

33. Employees outside Plaintiff's racial and ancestral group who engaged in workplace misconduct were not disciplined or terminated. In contrast, Plaintiff—who had no disciplinary record—was denied advancement opportunities, including sponsorship and support for a security clearance needed for progression, and was ultimately terminated without warning.

34. On March 21, 2024, Defendant terminated Plaintiff's employment, asserting "performance" concerns. This explanation was inconsistent with Plaintiff's actual work history, his repeated requests for additional assignments, and the lack of any prior warnings or negative feedback. The circumstances support a reasonable inference that the proffered reason was pretext and that Plaintiff's race and ancestry were motivating factors in the decision to terminate his employment.

35. Defendant's conduct constitutes unlawful racial discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

**C. Title VII of the Civil Rights Act of 1964, 42 U.S. C. § 2000e-2(a) – Religious Discrimination**

36. Plaintiff realleges paragraphs 8 through 35 as though fully set forth herein.

37. Title VII makes it unlawful for an employer to discharge, limit, segregate, or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because of the employee's religion. 42 U.S.C. § 2000e-2(a)(1).

38. Defendant is an employer as defined by Title VII, 42 U.S.C. § 2000e(b). Defendant supervised Plaintiff's day-to-day work, controlled his schedule and assignments, evaluated his performance, furnished the equipment and workplace, and possessed the authority to remove him from the worksite. Under the Fifth Circuit's hybrid economic-realities/common-law control test, Defendant was Plaintiff's employer for purposes of Title VII.

39. Plaintiff is a practicing Muslim and is therefore a member of a protected class under Title VII's protections against religious discrimination.

40. Plaintiff was qualified for his position as a Deployment Technician and consistently performed his job duties well, including volunteering for additional assignments, completing work efficiently, maintaining detailed documentation, and working overtime when offered.

41. Throughout his employment, Plaintiff was subjected to disparate treatment in the terms and conditions of his employment compared to similarly situated employees who were not Muslim. Plaintiff was denied training, coaching, overtime, and work-related opportunities routinely provided to non-Muslim employees. Individuals with personal or social connections to Plaintiff's supervisor, and who were not Muslim, were favored for opportunities that Plaintiff was denied.

42. Plaintiff also observed that employees outside his protected religious class engaged in serious workplace misconduct but were not disciplined or terminated. In contrast, Plaintiff—who had no history of discipline, no warnings, and no documented performance concerns—was subjected to heightened scrutiny and ultimately terminated without cause.

43. Plaintiff made clear his desire to advance and sought sponsorship for a security clearance, a critical step toward long-term employment opportunities. His supervisor refused to assist him in pursuing the clearance process. Although Plaintiff obtained help from another representative and completed the first interview, he was terminated before he could complete the second interview. These actions occurred under circumstances supporting an inference that Plaintiff's religion was a motivating factor in Defendant's decisions.

44. On March 21, 2024, Defendant terminated Plaintiff's employment, asserting "performance" concerns. This explanation was inconsistent with Plaintiff's actual work record, his repeated requests for additional tasks, and the absence of any performance-related warnings or discipline. The proffered reason was pretext for unlawful discrimination.

45. Defendant's conduct constitutes discrimination based on religion in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

D. **42 U.S. C. § 1981**

46. Plaintiff realleges paragraphs 8 through 45 as though fully set forth herein.

47. 42 U.S.C. § 1981 prohibits intentional discrimination in the making, performance, modification, and termination of contracts based on race and ancestry, and it guarantees all persons the right to equal treatment in contractual relationships, including employment.

48. When a § 1981 claim is based on a failure-to-promote or other adverse employment action, courts apply the burden-shifting framework set forth in *McDonnell Douglas*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff must first establish a prima facie case by showing that (1) he is a member of a protected class; (2) he sought and was qualified for a position for which applicants were being solicited; (3) he

was rejected; and (4) the employer selected someone outside the plaintiff's protected class or continued to seek applicants with the plaintiff's qualifications. *Golatt v. Perot Museum of Nature & Sci.*, 659 F. Supp. 3d 745, 751-52 (N.D. Tex. 2023). The plaintiff must show that race is the but-for cause of discrimination. *Comcast Corp. v. National Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 206 L. Ed. 2d 356 (2020). If the plaintiff meets this burden, the employer must articulate a legitimate, nondiscriminatory reason for its decision, after which the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretext for intentional discrimination.

49. Plaintiff is a man of Arab and North African ancestry. As recognized by the Supreme Court in *St. Francis College v. Al-Khazraji*, discrimination based on ancestry or ethnic characteristics—including Arab and North African ancestry—constitutes racial discrimination within the meaning of § 1981. *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 606, 107 S. Ct. 2022, 2024 (1987)

50. Defendant maintained a contractual relationship with Plaintiff. Defendant supervised Plaintiff's day-to-day work, controlled his schedule and assignments, evaluated his performance, furnished the equipment and workplace, and possessed the authority to remove him from the worksite. Under the Fifth Circuit's hybrid economic-realities/common-law control test, Defendant was Plaintiff's employer for purposes of Title VII.

51. Plaintiff was qualified for his position and performed his job well. He volunteered for additional work, completed his assignments efficiently, worked overtime when offered, and received positive feedback. Plaintiff had no disciplinary history, no warnings, and no documented performance issues prior to his termination.

52. Plaintiff was treated less favorably than similarly situated employees who were not of Arab or North African ancestry. Individuals outside Plaintiff's protected ancestry were granted training, coaching, overtime, and work opportunities that Plaintiff was denied. Persons personally connected to supervisors and lacking IT experience were favored over him.

53. Plaintiff also observed that employees outside his protected racial and ancestral group engaged in misconduct but were not disciplined or terminated. In contrast, Plaintiff was subjected to heightened scrutiny and ultimately terminated without cause.

54. On March 21, 2024, Defendant terminated Plaintiff's employment. The stated reason was inconsistent with Plaintiff's work history and the absence of any documented performance issues. The circumstances surrounding his termination support a reasonable inference of intentional discrimination based on his race and ancestry.

55. Defendant's conduct unlawfully interfered with Plaintiff's contractual employment relationship and denied him the equal right to make and enforce contracts as protected by § 1981.

56. As a result of Defendant's discriminatory actions, Plaintiff suffered lost pay, lost benefits, loss of earning capacity, emotional distress, and other compensable damages. Plaintiff seeks all remedies available under § 1981, including compensatory and punitive damages, back pay, front pay, and attorney's fees.

## V.   DAMAGES

57. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered the following injuries and damages:

    a. Plaintiff has suffered lost wages, lost benefits, loss of earning capacity, emotional distress, and other compensable injuries. Plaintiff seeks all relief available under Title VII, including back pay, front pay, compensatory damages, punitive damages where available, and attorney's fees.

    b. An award of back pay, including lost wages, lost employment benefits, lost retirement contributions, and lost Social Security credits;

    c. An award of front pay in lieu of reinstatement, as reinstatement is impractical and unworkable under the circumstances;

    d. Prejudgment interest on all sums recovered, and post-judgment interest at the maximum rate allowed by law;

## VI. ATTORNEY'S FEES

58. Plaintiff is entitled to recover his reasonable attorney's fees and costs incurred in prosecuting this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 1988(b), which authorize the award of attorney's fees to prevailing parties in actions brought under 42 U.S.C. § 1981. Plaintiff also seeks all taxable costs and litigation expenses as allowed by law.

## VII. PRAYER

59. WHEREFORE, PREMISES CONSIDERED, Plaintiff Mohammed Boujaer respectfully requests that Defendant Lockheed Martin Corporation be cited to appear and answer herein, and that upon final trial, the Court enter judgment in favor of Plaintiff and against Defendant, awarding the following relief:

a. An award of back pay, including lost wages, lost employment benefits, lost retirement contributions, and lost Social Security credits;

b. An award of front pay in lieu of reinstatement, as reinstatement is impractical and unworkable under the circumstances;

c. Prejudgment interest on all sums recovered, and post-judgment interest at the maximum rate allowed by law;

d. Reasonable attorney's fees, costs of court, and all litigation expenses as permitted by Title VII, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 1988(b);

e. All other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated:      December 1, 2025.

Respectfully submitted,

*/s/ Debra Edmondson*
**Debra Edmondson**
Texas State Bar No. 24045824
debra@edmondsonlawfirm.com

**The Edmondson Law Firm, P.L.L.C.**
P.O. Box 92801
325 Miron Dr; Suite 140
Southlake, TX 76092
Telephone: (817) 416-5291

**ATTORNEY FOR PLAINTIFF**