**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **MOHAMMED BOUJAER** | § | |
| **PLAINTIFF** | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 4:25-CV-01347-O** |
| **LOCKHEED MARTIN CORPORATION,** | § | |
| | § | |
| | § | |
| **DEFENDANT.** | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT LOCKEED MARTIN CORPORATION'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT Plaintiff Mohammed Boujaer files this response to Defendant Lockheed Martin Corporation's Motion to Dismiss.

## I.   INTRODUCTION

1. Defendant seek dismissal of Plaintiff's claims for discrimination based on race, national origin, and religion under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), as well as discrimination based on race and ancestry under 42 U.S.C. § 1981. contending that Plaintiff's pleadings contend that Plaintiff was denied training, coaching, preferential assignments and overtime opportunities, while Defendant alleges Plaintiff did not make these contentions in his Charge. Defendant also alleges that the Charge did not identify that Plaintiff was subject to heightened scrutiny. Defendant's Motion for Partial Dismissal should be denied, as both of Defendant's contentions are factually inaccurate or not supported by the relevant case law.

1

## II.   STANDARD UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

2. Federal Rule of Civil Procedure 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

3. A claim is plausible when the pleaded facts allow the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Although detailed factual allegations are not required, a plaintiff must provide more than conclusions and "threadbare recitals" of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

4. In considering a Rule 12(b)(6) motion, the Court accepts all well-pleaded facts as true, views those facts in a light most favorable to the plaintiff, and draws all reasonable inferences in plaintiff's favor. *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 346 (5th Cir. 2013); *ACQIS Ltd. Liab. Co. v. Wiwynn Corp.*, 614 F. Supp. 3d 499, 502 (W.D. Tex. 2022)(quoting *Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 361 (5th Cir. 2021)). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).

5. The question at this stage is not whether the plaintiff will ultimately prevail, but whether the complaint is adequate enough to "cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011).

### III.   ARGUMENTS AND AUTHORTIES

#### A.  Exhaustion of Administrative Remedies Requirement

6. Before filing suit under Title VII, Plaintiff must exhaust administrative remedies by filing a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(e)(1). The scope of a subsequent lawsuit is limited to the allegations made in the EEOC charge and any claims that could reasonably be expected to grow out of the investigation of that charge. *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)).

7. In determining whether a plaintiff has exhausted a particular claim, the Fifth Circuit has consistently held that the scope of the EEOC complaint should be construed liberally. *Pacheco,* 448 F.3d at 788. Because administrative charges are often prepared by laypersons "untutored in the rules of pleading," courts must construe such charges with the "utmost liberality." *Price v. Sw. Bell Tel. Co.,* 687 F.2d 74, 78 (5th Cir. 1982); *see also Preston v. Tex. Dep't of Family and Protective Servs.,* 222 F. App'x 353, 356 (5th Cir. 2007); *Matthews v. City of W. Point*, 863 F. Supp. 2d 572, 584 (N.D. Miss. 2012).

8. To balance the notice function of a charge with the Title VII's remedial purpose, review by a court is not limited to solely the scope of the administrative charge itself, but instead the scope of the EEOC investigation that could be "expected to grow out of the charge of discrimination." *Pacheco,* 448 F.3d at 788 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970)).

9. Courts must engage in a fact-intensive analysis of the charge that looks "slightly beyond its four corners, to its substance rather than its label." *Id*.

3

10. The inquiry is whether the charge placed the employer and the agency on notice of the conduct at issue—not whether the charge used precise legal terminology or mirrored the complaint's phrasing. See *Sanchez*, 431 F.2d at 463–66.

### B. The Charge Encompasses Preferential Treatment in Work Opportunities Including Training and Coaching

11. Defendant does not argue that the Charge omitted allegations of discriminatory termination, denial of overtime, or favoritism towards comparable employees outside of Plaintiff's protected class. Instead, Defendant focuses on the alleged absence of certain descriptive phrases—such as "training," "coaching," "preferential assignments," and "heightened scrutiny"—from the narrative of the Charge.

12. This argument misstates the governing standard. The exhaustion inquiry does not require a charge to mirror the precise wording of a subsequently filed complaint, particularly given it was drafted by Plaintiff himself, a layperson. See *Price v. Sw. Bell Tel. Co.,* 687 F.2d 74, 78 (5th Cir. 1982) Rather, the question is whether the factual allegations contained in the Charge would reasonably prompt an investigation into the employment practices challenged in this lawsuit. See *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).

13. Here, the Charge expressly alleges that Plaintiff was "frequently denied the opportunity to work overtime while similarly situated individuals outside of [his] protected class were afforded those opportunities." It further alleges that Defendant "hired multiple individuals outside of [his] protected class into the same position" as Plaintiff, despite those underqualified comparators having minimal qualifications or experience. Furthermore, Plaintiff identified those comparators as outside his protected classes based on his African descent and Muslim faith.

4

14. Plaintiff's allegations directly raise issues concerning the allocation of work opportunities, advancement support, and preferential treatment within the department. An investigation into overtime disparity and the hiring of minimally qualified comparators would reasonably encompass inquiry into how work was distributed, and as to whether those compactors received additional training, coaching, and support or development opportunities to perform their roles and whether Plaintiff was denied comparable access to such opportunities. If the comparators had no experience in the field, then an investigation could easily determine that they required additional training to be capable of performing there job at a satisfactory level.

15. In *Memon v. Deloitte Consulting, LLP*, the court declined to rigidly compartmentalize discrimination theories where the factual allegations described discriminatory treatment tied to overlapping protected characteristics. 779 F. Supp. 2d 619, 633–36 (S.D. Tex. 2011). Although the administrative charge emphasized religion and national origin, the court analyzed the substance of the alleged discriminatory treatment rather than isolating technical distinctions in labeling. Recognizing that race, religion, and national origin may be closely associated and that the lines between them are not always bright, the court evaluated the claims holistically and allowed the discrimination theories to proceed based on the factual narrative presented.

16. Similarly, here, Defendant's argument improperly elevates specific terminology over substance. The exhaustion standard identified above does not require Plaintiff in his Charge to use the specific words "training" or "coaching." Instead, the relevant inquiry is whether those employment practices would fall within the scope of an investigation into preferential treatment and unequal opportunity. Under the Fifth Circuit's liberal construction standard,

5

the employment practices identified in the Complaint fall within the scope of investigation created by the Charge. See *Fine v. GAF Chem. Corp.*, 995 F.2d 576 at 578 (5th Cir. 1993).

### C. The Charge Alleges Discriminatory Denial of Advancement-Related Support, Including Security Clearance Sponsorship

17. Further, the Defendant downplays the significance of the security clearance allegations in the Charge. The Charge states that Plaintiff asked his direct supervisor, Craig Phillips, four times over the course of a year about sponsorship for a security clearance with no success. When Plaintiff approached Sharon Martinez instead about the security clearance sponsorship after not going anywhere with Phillips, Martinez agreed to initiate the sponsorship within minutes of speaking with Plaintiff. Plaintiff's Charge expressly alleged that his supervisor repeatedly refused to sponsor his security clearance, an opportunity directly tied to career advancement. Denial of advancement-related opportunities constitutes actionable discrimination. See *Alvarado v. Texas Rangers*, 492 F.3d 605, 612–13 (5th Cir. 2007)

18. Security clearance sponsorship is not incidental. It is an advancement-related opportunity directly tied to long-term employment and career progression within the department. *Id*. An investigation into Plaintiff's allegation that his supervisor repeatedly failed to approve Plaintiff's requests for sponsor, paired along with other employment decisions by that same supervisor that reflected preferential treatment toward individuals outside Plaintiff's protected classes would naturally cause inquiry into whether advancement support was being distributed in a discriminatory manner.

6

19. The Charge therefore placed both the EEOC and Defendant on notice that Plaintiff was alleging discriminatory denial of advancement-related opportunities in addition to overtime disparity and termination. The Charge and the Complaint detail a pattern of discriminatory behavior by Defendant's employee Phillips. The Complaint does not introduce a new theory of liability by elaborating on how Defendant's advancement support was selectively provided. Instead, the Complaint expands upon conduct specifically described in the Charge. See *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008)

**D. The Charge and Complaint Clearly Show the Plaintiff was Subjected to Heightened Scrutiny.**

20. The Complaint's reference to "heightened scrutiny" does not introduce a new theory of liability or discrete employment practice. Rather, it describes the manner in which supervisory discretion was exercised, as reflected in the differential treatment already alleged in the Charge. The Fifth Circuit has made clear that exhaustion turns on the scope of the EEOC investigation that could reasonably be expected to grow out of the charge—not on whether the charge used specific terminology. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970); *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006). *See also McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273–74 (5th Cir. 2008) (reaffirming that courts construe EEOC charges broadly in terms of the investigation reasonably expected to grow from the charge).

21. The Charge alleges that Plaintiff was denied overtime opportunities while similarly situated individuals outside Plaintiff's protected classes were afforded those opportunities.

7

Moreover, the Charge states that minimally qualified individuals outside Plaintiff's protected classes were hired into the same position as Plaintiff.

22. Meanwhile, while employees outside of Plaintiff's protected class were being hired and trained to perform the job that Plaintiff was already qualified and experienced in, Plaintiff was denied on four separate occasions for sponsorship for a security clearance that would help Plaintiff advance his career. Plaintiff specifically describes requesting the sponsorship four times in one year from Craig Phillips in his Charge. Plaintiff further indicates that when this was futile, he asked another supervisor who approved the request in minutes. A reasonable inquiry into the Charge could determine that these were career advancements that Plaintiff was denied, while other employees outside of Plaintiff's protected class were still provided with advancement opportunities.

23. The Charge further alleges that employees outside Plaintiff's protected classes engaged in serious workplace misconduct and yet were not disciplined or terminated. Simultaneously, Plaintiff's contract was terminated. Plaintiff's allegations of preferential treatment, denial of advancement support, and differential discipline necessarily implicate how supervisory discretion was exercised and whether Plaintiff was subjected to harsher standards than similarly situated employees. *See Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).

24. An investigation into comparator leniency and Plaintiff's termination would reasonably include examination of the standards applied to Plaintiff, the level of oversight imposed upon him, and whether he was treated more strictly than employees outside his protected classes. *Id.* Under the governing exhaustion standard, the Charge was not required to use the specific phrase "heightened scrutiny" to encompass claims arising from unequal

discipline and termination. See *McClain*, 519 F.3d at 274–75 (barring claims only where the EEOC would not reasonably have investigated the challenged practice). *See also Memon.* 779 F. Supp. 2d at 635-36.

### E.  The Complaint Does Not Assert New Discrete Acts

25. Defendant's motion characterizes the Complaint's references to training, coaching, preferential assignments, and heightened scrutiny as new, unexhausted discrete acts.  That framing is incorrect.

26. Instead, the Complaint expands on the discriminatory allocation of work opportunities, advancement support, and discipline that were already identified and described in the Charge and could have grown during investigation by the EEOC.

### IV.    CONCLUSION

27. Defendant's argument in its Partial Motion for Dismissal improperly reduces the exhaustion of administrative remedies inquiry into a word-matching exercise. When instead, the Fifth Circuit's approach is not so rigid.

28. Here, the Charge alleged denial of overtime, preferential treatment of minimally qualified comparators outside the protected class, repeated refusal to sponsor Plaintiff's security clearance, differential discipline from comparators outside the protected class, and discriminatory termination. All of the allegations within the Charge would reasonably prompt investigation into the allocation of work opportunities, training, advancement support, supervisory discretion, and unequal disciplinary standards.

29. The Complaint does not introduce a new category of discrimination or a distinct theory of liability, nor does it introduce facts that would not easily grow out of an investigation

prompted by the facts within the Charge. Instead, the Complaint elaborates upon the same factual information presented in the Charge and provides additional detail regarding Defendant's conduct. The information about Defendant's conduct that does not word for word exist in the Charge could have easily been discovered in an investigation provided by the information in the Charge itself, but much of the information that the Defendant challenges in their Motion to Dismiss is contained within the Charge itself.

30. Because the allegations in the Complaint either exist in the Charge or are like or related to the claims that exist in the Charge and could reasonably be expected to grow from an EEOC investigation of the Charge, Plaintiff has satisfied the administrative exhaustion requirement.

31. Accordingly, Defendant's Partial Motion to Dismiss should be denied.

Dated: February 27, 2026                    Respectfully submitted,

                                            */s/ Debra Edmondson*
                                            **Debra Edmondson**
                                            Texas State Bar No. 24045824
                                            debra@edmondsonlawfirm.com

                                            **The Edmondson Law Firm, P.L.L.C.**
                                            P.O. Box 92801
                                            325 Miron Dr., Suite 140
                                            Southlake, TX 76092
                                            Telephone: (817) 416-5291

                                            **ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing instrument has been served on all counsel of record pursuant to the Federal Rules of Civil Procedure on this the 27th day of February 2026.

*/S/Debra Edmondson*
Debra Edmondson