IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MOHAMMED S BOUJAER | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No.  4:25-CV-01347-O |
| | § | |
| LOCKHEED MARTIN | § | |
| CORPORATION | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION & ORDER**

Before the Court is Defendant Lockheed Martin Corporation's ("Defendant" or "Lockheed") Motion for Partial Dismissal of Plaintiff's Original Complaint and Brief in Support (ECF No. 5), filed on February 6, 2026; Plaintiff's Response (ECF No. 8), filed on February 27, 2026; and Defendant Lockheed's Reply (ECF No. 9), filed on March 11, 2026. After considering the Motion, briefing, and relevant law, the Court determines that Defendant Lockheed's Partial Motion to Dismiss is **DENIED**.

**I.    BACKGROUND**[1]

Plaintiff Mohammed Boujaer ("Plaintiff") is a practicing Muslim of African descent. Plaintiff was employed as a Deployment Technician at Defendant's Fort Worth location[2] from February 28, 2022 until his contract's termination on March 21, 2024.

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Complaint. *See* Pl.'s Compl., ECF No. 1. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

[2] While Plaintiff was formally paid by Acara Solutions, Inc., Lockheed managers gave Plaintiff his daily work assignments, controlled Plaintiff's schedule, supervised Plaintiff's performance and production, and maintained the ability to terminate Plaintiff's employment.

During his employment, it was common for Plaintiff to request additional assignments after he completed his tasks and to work overtime when the opportunity was offered to him. Plaintiff alleges that despite his good performance, he was denied access to training, overtime opportunities, and work assignments that were commonly offered to employees outside of his protected class. Moreover, Plaintiff alleges that Lockheed hired individuals who lacked IT experience but had personal or social connections to Lockheed supervisor Craig Phillips ("Phillips"). According to Plaintiff, these individuals received preferential treatment—such as training and coaching—that Plaintiff was denied. Plaintiff alleges that employees outside of his protected class who engaged in reprimandable behavior were not disciplined or terminated.

Plaintiff also asked Phillips to initiate security clearance sponsorship for him four times over the course of a year, and each time Phillips refused. Plaintiff subsequently went to another Lockheed representative, who agreed to initiate his security clearance sponsorship. Plaintiff successfully completed the first security clearance interview but was terminated before he could complete his second interview.

Lockheed directed Acara to remove Plaintiff from the Fort Worth worksite and terminate his assignment, stating "performance" as the reason for termination. When Plaintiff was terminated, he had never been written up or warned about the alleged performance issues that caused his termination. Rather, Plaintiff received positive feedback about his work. Lockheed did not document or otherwise communicate concerns regarding Plaintiff's performance at any point before the directive to terminate Plaintiff's assignment. Therefore, Plaintiff had no indication that his job was at risk prior to his termination.

Within 150 days of termination, Plaintiff timely filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC"). In the Charge,

Plaintiff alleged discrimination on the basis of national origin (African) and religion (Muslim) in addition to unequal treatment, denial of opportunities, and termination for pretextual reasons. Plaintiff received a Notice of Right to Sue from the EEOC and alleges that he has exhausted all administrative remedies prior to filing this lawsuit.

Defendant filed a Motion for Partial Dismissal of Plaintiff's Complaint and Brief in Support pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] Plaintiff filed a Response,[4] and Defendant filed a Reply.[5] Defendant's Motion is ripe for the Court's review.

## II.  LEGAL STANDARD

### A.  Rule 12(b)(6) Standard

A claim for relief in a pleading requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8(a) exists to ensure that the defendant has fair notice of the plaintiff's claim and the claim's grounds. *Conley v. Gibson,* 355 U.S. 41, 47 (1957). If a plaintiff does not satisfy the Rule 8(a) federal pleading standard, the defendant may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

When reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded facts in the complaint as true and view such facts in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). "Detailed factual allegations" are not necessary, but a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists when the plaintiff pleads factual content that permits the court to reasonably infer the defendant's liability

---

[3] *See generally* Def.'s Mot. for Partial Dismissal, ECF No. 5.
[4] *See generally* Pl.'s Resp., ECF No. 8.
[5] *See generally* Def.'s Reply, ECF No. 9.

for the allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Unlike a "probability requirement," the plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Allegations must be sufficient beyond a speculative level to raise a right to relief. *Twombly*, 550 U.S. at 555.

### B.  Title VII Standard

Title VII of the Civil Rights Act prohibits discriminatory employer practices against any individual with regard to the individual's compensation, terms, conditions, or privileges of employment on the grounds of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Title VII provides a private cause of action for employment discrimination, giving federal courts subject matter jurisdiction over employment discrimination disputes. 42 U.S.C. § 2000e-5(f); *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018), *aff'd*, 587 U.S. 541 (2019). Before seeking judicial relief under Title VII, plaintiffs must exhaust their administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). The Title VII plaintiff must then receive a Notice of Right to Sue. 42 U.S.C. § 2000e-5(f)(1).

A civil action's scope is not limited to the exact charge brought before the EEOC. *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir.1990). Rather, the plaintiff's statement in the administrative charge is subject to a fact-intensive analysis, and the court looks "slightly beyond its four corners, to its substance rather than its label." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). Two competing Title VII policies inform the scope of the exhaustion requirement. Courts have recognized that because Title VII provisions are not designed for sophisticated parties and because pro se litigants initiate most complaints, "the scope of an EEOC complaint should be construed liberally" to protect the rights of a potentially uneducated charging party. *Id.* at 788.

4

Conversely, Title VII's main purpose is "to trigger the investigatory and conciliary procedures of the EEOC, in an attempt to achieve non-judicial resolution of employment discrimination claims." *Id*. at 788–89.

When a charge is filed, the EEOC carries out an investigation and endeavors to obtain voluntary legal compliance. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (1970). Only if the EEOC cannot achieve voluntary legal compliance can the issues set forth by the plaintiff in the administrative charge become the subject of court action. *Id.* This process demonstrates that "the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation." *Id.* A Title VII civil action is limited to "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* Lastly, the Fifth Circuit has made clear that checking a certain box or stating specific words is not necessary for a plaintiff to exhaust his administrative remedies. *Pacheco*, 448 F.3d at 792.

III.    ANALYSIS

   A.  Denial of Training and Coaching

Defendant argues that Plaintiff failed to exhaust his administrative remedies with regard to his claims of denial of training and coaching because there is no mention of training or coaching in the Charge.[6] Plaintiff responds that his factual allegations in the initial administrative Charge could reasonably trigger an investigation into the denial of training and coaching.[7] The Court agrees with Plaintiff.

The permissible scope of a Title VII plaintiff's lawsuit is constrained by the factual allegations contained in the EEOC's charge as well as the scope of the EEOC investigation which

---

[6] Def.'s Mot. for Partial Dismissal 5, ECF No. 5.
[7] Pl.'s Resp. ¶¶ 25–26, ECF No. 8.

"can be reasonably expected to grow out of the charge of discrimination." *Sanchez*, 431 F.2d at 466. Because the Court looks to the substance of Plaintiff's statement in the Charge rather than the label when determining the lawsuit's proper scope, Plaintiff's failure to use the precise words "training" and "coaching" in the Charge is not dispositive. *See Pacheco*, 448 F.3d at 789.

Here, Plaintiff stated in the Charge that he "asked Craig Phillip four times during the span of one year about Security Clearance sponsorship. Once, [sic] I knew he was not going to help me, I asked Sharon Martinez."[8] Clearly, Plaintiff's allegation in the Charge is that he was denied the opportunity to go through the required steps to obtain his security clearance, which required sponsorship. It is therefore reasonable to expect an EEOC investigation to assess whether Plaintiff was denied opportunities to obtain further qualifications (*i.e.* training) and whether that repeated denial by his supervisor, Phillips, constituted a denial of coaching. Accordingly, the Court **DENIES** Defendant's Motion as to Plaintiff's denial of training and coaching allegations.

### B.  Preferential Work Assignment

Defendant similarly argues that Plaintiff does not allege denial of preferential assignments in his Charge.[9] But again, stating specific words is not necessary for a plaintiff to exhaust his administrative remedies. *Id.* at 792. The Court finds that the allegations in the Charge would reasonably prompt an investigation into whether employees outside of Plaintiff's protected class were receiving preferential work assignments

Plaintiff alleges in the Charge that "I was frequently denied the opportunity to work overtime while similarly situated individuals outside of my protected class were afforded those opportunities. On the rare occasion I was selected for overtime, it was because not enough people

---

[8] Pl.'s Compl. Ex. A (Charge of Discrimination) 1, ECF No. 1-1.
[9] Def.'s Mot. For Partial Dismissal 2, ECF No. 5.

had signed up."[10] In his complaint, Plaintiff explains that despite his work ethic, he allegedly "was denied equal access to training, overtime opportunities, and job-related assignments that were routinely provided to employees outside his protected class[]."[11] Specifically, Plaintiff highlights that several individuals without IT experience and many who had personal or social connections to Plaintiff's supervisor were hired and received preferential treatment such as training and coaching that Plaintiff was not offered.[12]

Given Plaintiff's specific allegations in the Charge, an investigation regarding the supervisor's preferential treatment of others outside Plaintiff's protected class could reasonably have been expected to grow out of the Charge. Accordingly, Plaintiff's claims regarding preferential treatment in his complaint have been administratively exhausted and are within the permissible scope of the lawsuit.

### C. Plaintiff Heightened Scrutiny.

Defendant argues that in the Charge that Plaintiff does not allege facts to support a claim of heightened scrutiny.[13] On the other hand, Plaintiff argues that the claim of heightened scrutiny in the complaint merely describes the differential treatment that he alleged in the Charge.[14] The Court agrees with Plaintiff.

While Plaintiff's Charge does not expressly state that Plaintiff was subjected to "heightened scrutiny,"[15] he alleges specific instances of when his supervisor treated him differently than other employees outside of Plaintiff's protected class. Such allegations would reasonably prompt an EEOC investigation into whether Plaintiff was subjected to heightened scrutiny. In his

---

[10] Pl.'s Compl. Ex. A (Charge of Discrimination) 1, ECF No. 1-1.
[11] Pl.'s Compl. ¶ 10, ECF No. 1.
[12] *Id*.
[13] Def.'s Mot. for Partial Dismissal 5, ECF No. 5.
[14] Pl.'s Resp. ¶ 20, ECF No. 8.
[15] *See generally* Pl.'s Compl. Ex. A (Charge of Discrimination), ECF No. 1-1.

complaint, Plaintiff specifically alleges that he was denied overtime opportunities, less qualified individuals were hired for the same position as Plaintiff, and Plaintiff was treated less leniently than other employees.[16] These allegations are merely elaborations on those contained in his Charge.[17] Consequently, the Court finds that an investigation asking whether Phillips' preferential treatment of other employees caused Plaintiff to be scrutinized differently than those outside of his protected class is a reasonable outgrowth of the Charge.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Lockheed's Motion for Partial Dismissal of Plaintiff's Complaint (ECF No. 5) is **DENIED**.

**SO ORDERED** on this **20th day** of **July, 2026**.

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[16] *Id*. at 1.
[17] *Id.* Compl.("I was frequently denied the opportunity to work overtime while similarly situated individuals outside of my protected class were afforded those opportunities. On the rare occasion I was selected for overtime, it was because not enough people had signed up.").